----------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 09-11960 (BLS) |
| ALSET OWNERS, LLC, et al.,[1] | Jointly Administered |
| | |
| Debtors. | Ref. Docket No. 43 |

----------------------------------------------------------------X

## ORDER (I) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363(b); (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Alset Owners, LLC and its affiliated

debtors (collectively, the "Debtors"), as debtors and debtors in possession in the above-

captioned cases (the "Cases"), pursuant to sections 105, 107(b)(1), 363 and 365 of

Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"),

and Rules 2002, 6004, 6006, 9014 and 9018 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rules 6004-1 and 9018-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District

of Delaware (the "Local Rules") for entry of: (A) an order that (i) approves bidding and

auction procedures; (ii) approves bidding incentives; (iii) establishes a date for an

---

[1]  The Debtors and the last four digits of their respective tax identification numbers are: Alset Owners, LLC, Delaware limited liability company (7520); Altes, LLC, a Delaware limited liability company (6927); Setla, LLC, a Delaware limited liability company (6752); and Checkers Michigan, LLC, a Delaware limited liability company (8016). The Debtors' service address is Altes, LLC/Setla, LLC, 1200 North Federal Highway, Suite 111-B, Boca Raton, FL 33432-2813.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Purchase Agreement (as defined herein).

auction; (vi) establishes a date for a sale hearing; (v) approves the form and manner of notice of the sale or sales of all or substantially all of the Debtors' assets; (vi) approves the form and manner of notice of the assumption and assignment of executory contracts and unexpired leases and the cure amounts related thereto; and (vii) grants related relief (collectively, the "Bid Procedures"); (B) an order that: (i) approves the sale of substantially all of the Debtors' assets (the "Sale") pursuant to an asset purchase agreement dated June 5, 2009 between the Debtors and Checkerco, Inc. (the "Buyer") (as amended through the Fourth Amendment (as defined below), the "Purchase Agreement"), a copy of which, along with each of the amendments thereto through the Fourth Amendment (collectively, the "Amendments"), is attached hereto as Exhibit A, free and clear of all liens, claims, interests, and encumbrances to the Buyer or to another successful bidder(s) as provided in the Bid Procedures; (ii) authorizes the Debtors to assume and assign executory contracts and unexpired leases; and (iii) grants related relief; and the Court having reviewed the Motion and having heard the statements of counsel in support of the relief requested in the Motion at the hearing before the Court on July 7, 2009 to approve the Bid Procedures (the "Bid Procedures Hearing") and at the hearing on August 26, 2009 to approve the Sale (the "Sale Hearing," together with the Bid Procedures Hearing, the "Hearings"), and an order approving the Bid Procedures having been entered by the Court on July 9, 2009, as Docket No. 82, (the "Bid Procedures Order"), pursuant to which a sale process was conducted in which the Buyer was chosen as the successful bidder without the need for an auction; and the Court having been informed that the various objections to the Sale have been resolved, including a resolution of the objection filed by the Official Committee of Unsecured Creditors (the

2

"Creditors' Committee") that has resulted in an increase in the purchase price for the Acquired Specified Assets as reflected in the Fourth Amendment to Asset Purchase Agreement (the "Fourth Amendment") and an agreement on the cure amounts owed to R&R Capital, LLC, as real property lessor, in the amount of $30,000 and which is reflected on Exhibit B hereto (the "R&R Settlement"); and the Court having approved a stipulation among the Debtors, the Buyer and Textron providing for an increase in the purchase price being paid by the Buyer for the Acquired Textron Assets (the "Textron Settlement"), a copy of which is attached hereto as Exhibit C; and the Court having been informed that the Buyer has entered into an agreement with Triple R Associates ("Triple R"), a copy of which is attached hereto as Exhibit E (the "Triple R Modifications"), pursuant to which the parties have agreed to certain modifications and amendments relating to the Triple R leases effective as of the Closing; and the Court having been informed that the Buyer has agreed to modifications in respect of certain other unexpired leases and executory contracts that are being assumed and assigned to the Buyer hereunder as noted on Exhibit B hereto (such modifications being referred to herein as the "Other Settlements"), which Other Settlements shall be effective as of the Closing Date and shall not result in any increased liability to the Debtors or their estates; and the Court having been informed that the Debtors, the Buyer and LEAF Financial Corporation ("Leaf") are negotiating the terms of an agreement with respect to certain leased equipment (the "Leaf Equipment") which is expected to be memorlalized in the letter agreement (the "Leaf Agreement") a draft of which in substantially final form is attached hereto as Exhibit D; and the Court having been informed that the Debtors, at the Buyer's request, have paid the rent for September 2009 on the real property leases being assumed

3

by the Buyer hereunder and that the Buyer has agreed to reimburse the Debtors for such amounts at the Closing; and the Court, having determined that the legal and factual bases set forth in the Motion and at the Hearings establish good cause for the relief granted herein, and that the relief granted herein is in the bests interests of the Debtors, their estates and creditors; and upon the Motion and the record of the Hearings; it is hereby

## FOUND AND DETERMINED THAT:

A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). This proceeding is core pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are Sections 105, 107(b)(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9014 and 9018, and Local Rules 6004-1 and 9018-1.

C.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding pursuant to Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. Further, all findings of fact and conclusions of law announced by the Court at the Hearings are hereby incorporated herein.

D.     Proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Bid Procedures, the Sale and related relief has been provided in

4

accordance with Sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the Local Rules of this Court, and the Bid Procedures Order. The Debtors have given due and proper notice of the Sale and the assumption and assignment of each of the executory contracts and unexpired leases identified on Exhibit B hereto, which executory contracts and unexpired leases, as amended or modified as provided in this Order, are being assumed and assigned to Buyer hereunder (the "Assumed Contracts"), and the cure amounts related thereto (the "Cure Amounts") to each non-Debtor counter-party thereto (each a "Counterparty"). No other or further notice of the Motion, the Sale Hearing, the Sale, the Cure Amounts, the assumption and assignment of the Assumed Contracts, or of the entry of this Order is necessary.

E.     A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities as outlined in the Motion and Bid Procedures Order. A reasonable opportunity to object or be heard regarding the Cure Amounts associated with each Assumed Contract pursuant to Section 365(f)(2) of the Bankruptcy Code has been afforded to each Counterparty.

F.     The Debtors have complied in all material respects with the Bid Procedures Order. The Sale process contemplated by the Bid Procedures afforded a full, fair and reasonable opportunity for any person or entity to make an offer to purchase the Acquired Assets.

G.     The Acquired Assets, including the Acquired Textron Assets and the Assumed Contracts, sought to be transferred and/or assumed and assigned by the

5

Debtors to the Buyer pursuant to the Purchase Agreement are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

H.    The Debtors have demonstrated good, sufficient, and sound business purpose and justification under Sections 363 and 365 of the Bankruptcy Code for the consummation of the Sale outside the context of a plan, including the assumption and assignment of the Assumed Contracts, and for the entry into the Subject Transactions (as defined below), and such actions are appropriate exercises of the Debtors' business judgment. The Debtors' determination that the Purchase Agreement, as modified by the Amendments, is the highest or best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment. Approval of the Motion, the Purchase Agreement, including the releases provided for in Section 9.6 thereof, the Sale, the Amendments, the Leaf Agreement, the R&R Settlement, the Triple R Modifications, the Textron Settlement, the Other Settlements and any related agreements and the consummation of the transactions contemplated by any of the foregoing (collectively, the "Subject Transactions") are in the best interests of the Debtors, their creditors, and their estates.

I.    The Buyer is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, therefore, is entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in that: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Acquired Assets; (ii) the Buyer complied with the material provisions in the Bid Procedures Order; (iii) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have

6

been disclosed; (iv) the Purchase Agreement was negotiated and entered into in good faith, based upon arm's length negotiations; (v) the Buyer has not otherwise violated Section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the Purchase Agreement and any other agreements or instruments related thereto were in good faith.

   J.  The terms and conditions of the Purchase Agreement and the other Subject Transactions are fair and reasonable and in the best interest of the Debtors, the creditors and their estates. The Purchase Price, as defined in the Purchase Agreement as modified by the Amendments, and the other consideration being provided thereunder represent a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these Cases, and constitutes adequate and reasonably equivalent value for the Acquired Assets. The allocation of the Purchase Price between the Acquired Textron Assets and the Acquired Specified Assets is fair and reasonable under the circumstances.

   K.  The Debtors have full corporate power and authority to execute and deliver the Purchase Agreement, the Amendments, the Leaf Agreement, the Textron Settlement and all other documents contemplated hereby and thereby, and, except as otherwise expressly set forth in the Purchase Agreement or the Textron Settlement and subject to the execution and delivery of the Leaf Agreement by the parties thereto, no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Purchase Agreement and the other Subject Transactions.

   L.  The Buyer is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of any of the Debtors as defined in

7

the Bankruptcy Code. The Sale does not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors. Except for the Assumed Liabilities as set forth in the Schedule 1.3(a) of the Purchase Agreement as modified by this Order, the Buyer's purchase of the Acquired Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing Date.

M.     The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full. Therefore, the Debtors may sell the Acquired Assets free and clear of any liens, encumbrances and other interests (collectively, "Interests") in the Acquired Assets pursuant to Section 363(f) of the Bankruptcy Code (other than Assumed Liabilities as modified by this Order).

N.     The Buyer is only assuming the Assumed Liabilities on the terms set forth in the Purchase Agreement as modified by this Order, and is not assuming any other obligations. In addition, the Acquired Assets do not include the Excluded Assets, as defined in the Purchase Agreement, which Excluded Assets shall remain property of the Debtors' estates subject to existing Interests, if any.

O.     The transfer of the Acquired Assets to the Buyer will be a legal, valid and effective transfer of the Acquired Assets, and will vest the Buyer with all of the Debtors' right, title and interest of, in and to the Acquired Assets, free and clear of (i) all Interests of any kind or nature whatsoever (other than the Assumed Liabilities as modified by this Order), (ii) all Excluded Liabilities as defined in the Purchase Agreement and (iii) all claims as defined in section 101(5) of the Bankruptcy Code, rights or causes of action (whether in law or in equity), obligations, demands, restrictions,

8

interests, and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise, including any "Claim" as defined in the Purchase Agreement (collectively, the "Claims"), other than the Assumed Liabilities as modified by this Order.

P.    With respect to any and all entities and persons asserting any Claims and Interests in and to the Acquired Assets (including those of any taxing authorities or other Government Authorities), either (i) applicable nonbankruptcy law permits the Sale of the Acquired Assets free and clear of such Claims and Interests, (ii) such person or entity has consented to the Sale and the transfer of the Acquired Assets free and clear of such Claims and Interests, (iii) such Interest is a lien and the purchase price for the relevant Acquired Asset is greater than the value of such lien, (iv) such Interest is in *bona fide* dispute or (v) such person or entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Claims and Interests.

Q.    Any holders of Claims and Interests who did not object or who withdrew their objections to the Sale or the Motion are deemed to have consented to the Motion and the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

R.    Subject to, and at the time of, the Closing Date, the Debtors shall assume the Assumed Contracts, and assign each of them to the Buyer pursuant to Sections 363 and 365 of the Bankruptcy Code and this Order, notwithstanding any anti-assignment clause or other provision in any of the Assumed Contracts granting rights or privileges personal to any Debtor or otherwise tending to limit the Buyer's use, enjoyment or benefit of the full panoply of rights and privileges under each such

9

Assumed Contract as provided in Section 365(f) of the Bankruptcy Code. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and other parties-in-interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

S.    *The Notice of Cure Amounts in Connection with the Assumption and Assignment of Unexpired Leases and Executory Contracts* filed with the Court on July 15, 2009, as Docket No. 87 in the Cases (the "Cure Notice") and *the Supplemental Notice of Unexpired Leases and Executory Contracts to be Assumed and Assigned*, filed on August 6, 2009, as Docket No. 122 in the Cases (the "Supplemental Cure Notice"), were served upon the Counterparties and the Cure Amounts set forth therein (as modified by this Order, the "Cure Payments") are the sole amounts necessary under Sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses under the Assumed Contracts. In accordance with the Purchase Agreement, the Buyer shall make the Cure Payments for each of the Assumed Contracts as soon as practicable on or after the Closing; provided that if any rental and related obligations are due and unpaid as of the Closing for July or August 2009 in respect of the Assumed Contracts, then such amounts shall be paid by the Debtors as soon as practicable after the Closing (or if paid by the Buyer, then the Debtors shall reimburse the Buyer for such amounts as soon as practicable after the Closing).

T.    The Buyer and the Debtors have provided evidence of adequate assurance of the Buyer's future performance under each of the Assumed Contracts and to

10

the Counterparties thereto within the meaning of Sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

U.     By this Order, the Debtors, subject to the occurrence of the Closing Date under the Purchase Agreement, are authorized to assume and assign to the Buyer only the Assumed Contracts and are not assuming and assigning any executory contracts or leases other than the Assumed Contracts.

V.     Given all of the circumstances of the Cases and the adequacy and fair value of the Purchase Price for the proposed Sale of the Acquired Assets to the Buyer under the Purchase Agreement and the other transactions contemplated hereby and thereby constitutes a reasonable and fair exchange of consideration for the Acquired Assets. The other Subject Transactions being approved pursuant to the terms of this Order are integral to the Purchase Agreement and are in the best interests of the Debtors and their estates, creditors and other parties-in-interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

W.     The Sale does not constitute a *sub rosa* chapter 11 plan.

X.     Time is of the essence in consummating the Sale and the other Subject Transactions. Accordingly, there is a cause to lift the stay contemplated by the Bankruptcy Rules 6004(h) and 6006(d).

## THEREFORE, IT IS HEREBY ORDERED THAT:

1.     To the extent not previously approved pursuant to the Bid Procedures Order, the relief requested in the Motion as modified by the terms of this Order is GRANTED and approved in all respects, including the Sale of the Acquired Assets to the Buyer under the Purchase Agreement, as amended by the Amendments, the

11

assumption and assignment of the Assumed Contracts and the consummation of the other Subject Transactions.

2.     All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled (either by the terms of this Order, the Settlements, announced to the Court at the Sale Hearing and/or by stipulation filed with the Court), and all reservations of rights included in such objections, are hereby overruled and denied on the merits to the extent such objections or reservations have not been otherwise explicitly satisfied, reserved or adequately provided for in this Order.

3.     The Purchase Agreement, as amended by the Amendments, including the releases provided for under Section 9.6 thereof, and the other Subject Transactions are hereby approved in all respects, and shall be deemed in full force and effect, binding and benefiting the Debtors, their estates, the Buyer, the Designated Buyer, the Counterparties, Textron, Leaf, R&R Capital, LLC, Triple R, the Seller Release Parties, the Buyer Release Parties and their successors and assigns; provided that if the Leaf Agreement is not executed and delivered by the parties thereto within three (3) business days of the Closing, then the Leaf Agreement shall not be considered part of the Subject Transactions being authorized and approved by this Order and each unexpired Seller Lease (as defined in the Leaf Agreement) shall be deemed rejected as of the Closing.

4.     The Debtors are hereby authorized and empowered pursuant to Sections 105, 363 and 365 of the Bankruptcy Code or otherwise to execute and deliver the Purchase Agreement, including the Amendments thereto, the Leaf Agreement, the Textron Settlement and such other agreements, documents or instruments contemplated

12

hereby and thereby, and to take such action as is necessary or desirable to implement and consummate the Sale and the other Subject Transactions and to perform all such obligations contemplated by this Order, the Purchase Agreement and the other Subject Transactions, including the sale and transfer of the Acquired Assets to the Buyer and the assumption and assignment of the Assumed Contracts to the Buyer on the terms of the Purchase Agreement as modified by this Order, and the Debtors are authorized to receive the benefits of the Purchase Agreement, the Subject Transactions and the transactions contemplated hereby and thereby, including receipt of the Specified Purchase Price and the releases being afforded to it under section 9.6(b) of the Purchase Agreement. The Debtors and the Buyer are further authorized and directed to credit against the Purchase Price an amount sufficient to satisfy the Debtors' pro rata share of any property tax liabilities for calendar year 2009 (which amount shall be no less than the amount reflected on a schedule mutually acceptable to the Buyer and the Sellers and delivered at the Closing), and if such amount is insufficient to cover the Debtors' pro rata share of such taxes, then the Debtors shall reimburse the Buyer for such shortfall as soon as practicable after the Buyer has notified the Debtors that such payment has been made.

5.      Upon the Closing Date, the Buyer shall take title to and possession of the Acquired Assets free and clear of all Claims and Interests, excepting and subject only to the Assumed Liabilities as modified by this Order. Pursuant to Section 363(f) of the Bankruptcy Code and the Purchase Agreement, with the exception of the Assumed Liabilities as modified by this Order, the transfer of title to the Acquired Assets and the Assumed Contracts shall be free and clear of any Claims and Interests in or against the Acquired Assets or the Assumed Contracts. All Claims and Interests, if any, shall attach

13

solely to the proceeds of the Sale with the same extent, validity (or invalidity), priority and perfection as they attached to the Acquired Assets immediately prior to the Closing Date; provided that the Textron Purchase Price shall be paid directly by the Buyer to Textron on account of the Acquired Textron Assets in accordance with the Textron Settlement, and the Claims and Interests of Textron in and with respect to the Acquired Textron Assets shall be released and discharged as provided in the Textron Settlement and title to the Acquired Textron Assets shall pass to the Buyer free and clear of all Claims and Interests; and provided further that if the Leaf Agreement is executed and delivered by the parties thereto within three (3) business days of the Closing, then the Buyer shall pay $150,000 directly to Leaf for the Leaf Equipment whereupon, effective as of the Closing Date, the Seller Leases shall be terminated and of no further force and effect and Leaf shall be deemed without any further action to waive and release its liens, Claims and Interests in and with respect to the Leaf Equipment or as against the Debtors or any of their estates as provided in the Leaf Agreement and title to the Leaf Equipment shall pass to the Buyer free and clear of all Claims and Interests. If the Leaf Agreement is not executed by the parties thereto within three (3) business days of the Closing, then the Seller Leases shall be deemed rejected as of the Closing Date and the Leaf Agreement shall have no force and effect and shall not be part of the Subject Transactions being approved by this Order.

6. All entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Buyer at the Closing.

14

7.     The Buyer is not a successor to any of the Debtors or their estates by reason of any theory of law or equity. Except for the Assumed Liabilities as modified by this Order, the Buyer shall not have any liability or responsibility for any liability or other obligation of the Debtors, including without limitation, arising under or related to the Acquired Assets, for any period of time prior to the Closing Date. Other than the Assumed Liabilities as modified by this Order, the Buyer shall not be liable for any Claims and Interests against the Debtors, any of their predecessors or affiliates, their estates or property, including the Acquired Assets, whether known or unknown, now existing or hereafter arising, whether fixed or contingent, arising prior to the Closing Date.

8.     Pursuant to Sections 105 and 363 of the Bankruptcy Code, any and all creditors, employees and equity holders of the Debtors shall be barred, estopped and enjoined from taking any action of any kind against the Buyer, its affiliates or the Acquired Assets on account of any Claims and Interests against any Debtor, its estate or assets, including the Acquired Assets, that arose prior to the Closing Date under the Purchase Agreement, other than with respect to the Assumed Liabilities as modified by this Order.

9.     All Claims and Interests of any kind whatsoever existing as to the Acquired Assets prior to the Closing Date shall be unconditionally released, discharged and terminated on the Closing Date without further action. All entities are authorized and specifically directed to strike all recorded Interests against the Acquired Assets from their records, official and otherwise.[3]

---

[3]     Such entities include, but not limited to, all filing agents, filing officers, title agents, title companies, recorders of deeds, registrars of deeds, administrative agencies or units, governmental

15

10.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing any Interests of record against or in the Acquired Assets shall not have delivered to the Debtors or the Buyer prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests that the person has with respect to the Acquired Assets, then, subject to the occurrence of the Closing Date, (a) each of the Debtors is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the Buyer with respect to the Acquired Assets, and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests (including any lien or security interest asserted by Textron in connection with certain loans evidenced by certain promissory notes dated as of June 28, 2000) against or in the Acquired Assets except the Assumed Liabilities.

11.     Subject to the occurrence of, and at the time of, the Closing Date, the Debtors are authorized to assume and assign each Assumed Contract to the Buyer free and clear of all Interests. The payment of such Cure Payments (if any) shall (a) effect a cure of all defaults existing thereunder as of the Closing Date, (b) compensate for any actual pecuniary loss to such non-debtor party resulting from such defaults, and (c) together with the assumption and assignment of the Assumed Contracts by the Buyer, constitute adequate assurance of future performance thereof. Pursuant to Sections 363,

departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets conveyed to the Buyer.

365(f), and 365(k) of the Bankruptcy Code, the assignment by the Debtors to the Buyer of such Assumed Contracts shall not be a default thereunder. Upon such assumption and assignment to the Buyer, the Debtors shall not have any further liabilities to the Counterparties (other than as expressly provided in the proviso to paragraph 14 of this Order), and the only liabilities that the Buyer shall have with respect to the Assumed Contracts shall be payment of the Cure Payments and the Buyer's obligations under the Assumed Contracts that accrue on or after the Closing Date.

12.    Any provision in any Assumed Contract that prohibits or conditions the assignment of such Assumed Contract or allows the non-debtor party to such Assumed Contract to terminate, recapture, impose any penalty, condition a renewal or extension, or modify or limit any term or condition upon the assignment of such Assumed Contract, constitutes an unenforceable anti-assignment provision that is void and of no force and effect. All other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts have been satisfied. Upon the Closing Date, in accordance with Sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all rights, title, privilege and interest of the relevant Debtor under the applicable Assumed Contracts.

13.    In accordance with Section 365 of the Bankruptcy Code, upon the Closing Date, the Buyer shall be deemed to be substituted for each relevant Debtor as a party to the applicable Assumed Contracts and the Debtors shall be relieved from all liability on such Assumed Contracts, including with respect to the payment of any Cure Payments (other than as provided in the proviso to paragraph 14 of this Order).

17

14.     The Buyer has provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of Sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code, and shall pay all Cure Payments on or as soon as practicable after the Closing; provided that if any rental or related obligations are due and unpaid as of the Closing for July or August 2009 in respect of the Assumed Contracts, then such amounts shall be paid by the Debtors (or if paid by the Buyer, then the Debtors shall reimburse the Buyer for such amounts as soon as practicable after the Closing).

15.     There shall be no rent accelerations, assignment fees, increases, or any other fees, costs and amounts charged to the Buyer as a result of the assumption and assignment of the Assumed Contracts. Notwithstanding the foregoing, the Buyer shall reimburse the Debtors on the Closing Date to the extent the Debtors prior to the Closing Date advanced the payment of rent due on September 1, 2009 with respect to any Assumed Contracts constituting real property leases.

16.     Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, and other than the Cure Payments, all parties to the Assumed Contracts are forever barred and enjoined from raising or asserting against the Buyer or the Acquired Assets any assignment fee, default, breach, or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing Date or arising by reason of the Closing Date.

17.     The Buyer is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code.

18

18.     The Sale approved by this Order is not subject to avoidance or costs or damages to be imposed pursuant to Section 363(n) of the Bankruptcy Code.

19.     The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and provisions of the Purchase Agreement and the provisions of this Order.

20.     No governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Acquired Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of the Cases or the consummation of the Sale.

21.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale contemplated by the Agreement.

22.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale.

23.     The Buyer is hereby authorized in connection with the consummation of the Sale to allocate, assign, designate, lease, sublease, license, sublicense, transfer or otherwise dispose of any of the Acquired Assets, including the Assumed Contracts, among its affiliates, designees, assignees, successors, including Checkers Drive-In Restaurants, Inc. (collectively, the "Designated Buyer"), in its sole discretion with all of the rights and protections accorded to the Buyer under this Order and the Purchase Agreement being afforded to such Designated Buyer, and the Debtors

19

shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

24.     This Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, any Debtor (whether known or unknown), any holders of Interests in the Acquired Assets, all Counterparties, the Buyer, the Designated Buyer, Textron, Leaf, Triple R, R&R Capital, LLC, each of their successors and assigns and any trustees, if any, subsequently appointed in the Cases or upon a conversion to Chapter 7 under the Bankruptcy Code with respect to any Cases. This Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer, the Designated Buyer, the Seller Release Parties, the Buyer Release Parties, he Counterparties, Textron, Triple R, Leaf, R&R Capital, LLC and each of their respective successors and assigns.

25.     The failure specifically to include or make reference to any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement is authorized and approved in its entirety.

26.     This Order shall not be modified by any chapter 11 plan confirmed in the Cases or subsequent order of this Court unless expressly consented to in writing by the Buyer.

27.     The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the Debtors and the Buyer in accordance with the terms thereof without further order of the Court, provided that: (a) any such amendment is not

20

material to the Debtors or the Debtors' estates, (b) notice of such amendment shall be provided to counsel to the Official Committee of Unsecured Creditors and the Office of the United States Trustee for the District of Delaware and (c) a copy of such amendment is filed with the Court.

28. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all modifications thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith or which has been assigned or sold by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, the Subject Transactions, the Purchase Agreement (and all agreements and instruments related thereto), and the assumption and assignment of the Assumed Contracts, including but not limited to protecting the Buyer, or the Acquired Assets, from and against any of the Claims or Interests and to compelling delivery of all Acquired Assets to the Buyer.

29. To the extent that any provisions of this Order shall be inconsistent with the provisions in the Purchase Agreement, any prior order, or any pleading with respect to the motions in these cases, the terms of this Order shall govern.

30. Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, (iii) the Debtors are authorized to close the Sale immediately upon entry of this Order, and (iv) the Debtors may, in their

21

discretion and without further delay, take any action and perform any act authorized under this Order.

31.     The provisions of this order are nonseverable and mutually dependent.

Dated: August 31, 2009

HONORABLE    BRENDAN    L.    SHANNON
UNITED STATES BANKRUPTCY JUDGE

22